JOHN W. HAMPTON ET AL., TRUSTEES, PLAINTIFFS, DEFENDANTS IN ERROR, v. THE HARTFORD FIRE INSURANCE COMPANY, DEFENDANT, PLAINTIFF IN ERROR.

Submitted July 9, 1900—Decided November 19, 1900.

1. Forfeiture clauses in insurance policies are not favored in the law. The rule as to them in this state is settled. The court will never seek for a construction of a forfeiture clause which will sustain it if one which will defeat it is reasonably deducible from the words or terms used.

2. The words "occupied" and "unoccupied" in a policy of insurance will be given force with reference to the nature and character of the building, the purposes for which it is designed, and the uses contemplated by the parties as expressed in the contract. The construction given to these words as applied to a dwelling, will not cover a barn, a mill, a saw-mill, a factory, or school-houses, music halls, theatres or churches.

3. A church building kept for use for the purposes for which it is designed, and used as occasion presents, and as the convenience of the congregation may require, and no intent appearing to abandon it for the purposes of its use by the temporary periods of non-user, even though such periods exceed the ten days' limit in a policy, is not *per se* leaving the church building vacant and unoccupied within the forfeiture clause of the policy, and upon such proof alone a nonsuit was rightly refused.

4. Where there is a conflict in the testimony; whether there is occupancy or non-occupancy, is a question of fact to be determined by the jury.

On error to the Camden Circuit Court.

For the plaintiffs in error, *James Buchanan.*

For the defendant in error, *George A. Vroom* and *William J. Kraft.*

The opinion of the court was delivered by

FORT, J. The defendant is a fire insurance company. By its policy issued on the 20th day of August, 1896, in consideration of $15 premium paid, it insured the church property of which the plaintiffs are the trustees, against loss or damage from fire, for a period of five years from said date. The property insured was described in the policy as a "frame church building and addition attached thereto with shingle

roof, situate at the northeast corner of Haddon and Jefferson avenue, in the village of West Berlin, Camden county, N. J."

The property was totally destroyed by fire on June 1st, 1899, and due and timely proof of loss was made. Subsequently, on July 31st, 1899, the defendant, by its general agents, notified the plaintiffs in writing through their attorney, that they denied owing anything on said policy. Suit was instituted and the pleas filed set up—

"(1) The church building was and became vacant and unoccupied and so remained for upwards of ten days without the consent in writing thereto of the said defendant being indorsed upon or added to said policy.

"That (2) the hazard was increased by means within the knowledge and control of the said plaintiff, and was so kept and continued until said loss by fire."

We agree with the trial judge as to the second plea, that there is no proof as to there being any hazard within the contemplation of the policy proven in the cause, unless it be the boarding up and locking of the church, as was proven, but that would seem rather to be a precaution for safety than a hazard. However, this point is not raised in the brief of the defendant except in so far as the claim that the church was left vacant and unoccupied was a violation of the "hazard" clause of the policy.

The defendant's counsel puts the issues tried very fairly in his brief when he says: "The defences litigated upon the trial were:

"*First.* That the building for many weeks prior to the fire was vacant or unoccupied without the consent of the company.

"*Second.* That by means of such vacancy or non-occupancy the hazard was increased."

It follows, of course, therefore, that if the first condition, vacancy or non-occupancy, did not exist, the second defence fails.

The attempt of the defence is to defeat the recovery in the case by the fact that a forfeiture has occurred under the conditions of the policy from the leaving of the premises vacant or unoccupied, exceeding the ten days allowed by the policy.

Forfeitures of this class are not favored in the law. The rule as to them in our state is settled. Our courts say: "It has become a settled rule in the construction of contracts of insurance, that policies of insurance will be liberally constured to uphold the contract; and conditions contained in them which create forfeitures will be construed most strongly against the insurer and will never be extended beyond the strict words of the policy." *Carson* v. *Jersey City Insurance Co.,* 14 *Vroom* 300; *Snyder* v. *Insurance Co.,* 30 *Id.* 544.

The court will never seek for a construction of a forfeiture clause in a policy which will sustain it, if one which will defeat it is reasonably deducible from the terms or words used to express it. *State Insurance Co.* v. *Maackens,* 9 *Vroom* 564, 572; *Ripley* v. *Aetna Insurance Co.,* 29 *Barb.* 552; *Rann* v. *Home Insurance Co.,* 59 *N. Y.* 387; 1 *Joyce Ins.,* § 220; *Hartford Insurance Co.* v. *Walsh,* 54 *Ill.* 164; *May Ins.* (2d ed.), § 170.

We are not without a construction of the words "occupied" and "unoccupied" in this state. This court has defined these terms, and their application to buildings insured by policies containing them, as follows: "They are always to be construed with reference to the nature and character of the building, the purpose for which it is designed and the uses contemplated by the parties as expressed in the contract. The occupancy of a dwelling, of a barn, and of a mill is in each case essentially different in its scope and character. The term 'occupied' always implies a substantial and practical use of the building for the purposes for which it is intended and as contemplated by the policy." *Sonneborn* v. *Insurance Co.,* 15 *Vroom* 220, 223.

The same effect is given to these words by the New York Court of Appeals. *Whitney* v. *Black River Insurance Co.,* 72 *N. Y.* 117.

As to a dwelling-house, it being designed for occupancy by human beings, it is occupied when human beings habitually reside in it, and unoccupied when no one lives or dwells in it. *Hartshorne* v. *Agricultural Insurance Co.,* 21 *Vroom* 427.

The definition of "occupied," as applied to a dwelling will not, of course, cover a barn, a mill, a saw-mill, a factory, music halls, theatres or churches.

If church buildings are kept for use for the purposes for which they are designed, and used as occasion presents and as the convenience of the congregation may require, and there is no intent shown to abandon them for the purposes of their use by the temporary periods of non-user, even though those periods may exceed the ten-day limit in a policy, such act is not *per se* a leaving of a church building vacant and unoccupied within the forfeiture clause of the policy, and hence, upon such proof alone, a nonsuit would not be proper. If, however, it was undisputed under the evidence in the cause that the premises had been unoccupied as a church for more than ten days, without any intention or expectation of resuming worship therein; or that an abandonment of its use for church purposes was apparent from the dissolution of the church society, or an unreasonable time of non-occupancy resulting from the non-resumption of religious services therein, then a nonsuit might be proper.

The chief reliance for reversal in this case is in the refusal of the trial judge to take the case from the jury, and in his submitting as a question of fact to the jury whether the church was at the time of the fire, and for ten days before, vacant or unoccupied within the terms of the policy.

We think the trial judge was right on both positions. There was evidence from which the jury in the case could find that the church property, considering its uses, was not vacant or unoccupied within the terms used in the policy, as they should be applied to a church building.

Services had been held in the church until there was no minister to officiate—about the 1st of April previous to the fire. The building was in charge of the trustees, and the president of the board had the key and acted as he always had —as the sexton—visiting it frequently, caring for it and going in it as often as five times a week. The furniture was in the church, as was the organ used in worship. There was no change in the use of the property, and there was no determination

to non-use it as a church. The church remained ready to be opened as soon as anyone could be secured to preach. A Rev. Mr. Miller, it was supposed, was secured to preach on the second or third Sunday in May, as Mr. Hampton, the president of the trustees testifies, and the church was opened and the congregation gathered, as the evidence would indicate, but Mr. Miller did not appear. Does the fact that the preacher does not appear cause the church to be unoccupied? Is it possible that in case a city church, as is frequently done, closes for the month of August, and the public worship is discontinued for that month, that in case of fire after ten days from the closing, that its insurance is forfeited? Is it possible that in case a church for any reason is without a pastor, and closes temporarily until someone is secured, and the church burns after ten days from such closing, that the church is vacant and unoccupied within the contemplation of this condition in its policy of insurance, and no recovery for the loss can be had?

To give such a construction to a policy on a church would be to wholly disregard the contemplated uses of the property and the sensible and reasonable construction to be given to the term "occupied" as applied to such property.

In a case having many of the same facts as this, and founded upon the same character of defence, the Appellate Division of the New York Supreme Court gave to the word "unoccupied," as applied to church property, the construction here given. *Carher* v. *Royal Insurance Co.,* 63 *Hun* 92.

In *Whitney* v. *Black River Insurance Co., supra,* the building insured was a saw-mill, and the Court of Appeals of the State of New York construed the "vacant and unoccupied" clause in that policy in connection with the uses to which the saw-mill could be put. In passing upon that case, the court says: "It is quite obvious that the parties did not intend by this provision that the saw-mill should be inhabited or that any person should remain in it so as to watch and guard it against fires, in order that the plaintiff should have the protection of the policy. * * * The interruptions of the business and the discontinuance of the active use of

the saw-mill by reason of low water, diminished custom or derangement of the machinery, if held to be a violation of the condition, and to create a vacancy and non-occupation of the building within the true meaning of the condition, would greatly impair the value of the contract as a contract of indemnity, and the result would be that the contract would be deemed forfeited by the happening of events which might reasonably have been anticipated and which are among the common incidents of the business carried on, on the insured premises. * * * Delays and interruptions incident to the business of conducting a saw-mill, although involving a temporary discontinuance of the active use of the mill for sawing purposes, would not, we think, make the mill 'vacant and unoccupied' within the meaning of the policy. Take the case of the insurance of a church building or school-house or cider mill. Would the fact that the church was closed six days consecutively each week, be a violation of the condition in question, or would the school-house, in vacation time, or the cider mill, when no apples were to be had, be without the protection of the policy? These illustrations serve to show that the condition against vacancy and non-occupation is to be construed and applied in view of the subject-matter of the contract, and of the ordinary incidents attending the use of the insured property."

It would be difficult to secure a statement of the principle which we think applicable to the construction of the words "vacant and unoccupied," as applying to a church, of greater clearness than this quotation from the New York Court of Appeals.

In the case of Whitney *v.* Black River Insurance Co., from which the quotation was just made, the court also held that it was a question of fact as to whether the building was vacant or unoccupied within the policy, to be determined, as stated in that case, by the referee who was sitting as a jury. The referee found as a fact in that case that the fire occurred on the 16th of May, and that no sawing had been done for sixteen or eighteen days before, but that there were logs in the mill-yard and elsewhere, which the plaintiff intended

to saw at the mill; that there was lumber piled in the yard, and a small quantity was kept in the mill up to the time of the fire, from which, from time to time, small sales were made, the last one the day .before the fire, and the court says that this evidence would not have justified the finding that the plaintiff had abandoned or intended to abandon the use of the mill, and says there was no error in the finding of the referee that the mill did not become vacant and unoccupied within the meaning of the policy. See note to *Moore* v. *Phœnix Insurance Co.,* 10 *Am. St. Rep.* 390.

That case is authority for the position taken by the trial judge in this case, viz., that whether, under the evidence, there was occupancy or non-occupancy was a question for the jury. We think the refusal to nonsuit and the refusal to direct a verdict for the defendant were right, and that there was no error in the charge of the court or in its refusal to charge as requested, and the judgment should be affirmed.

*For reversal*—None.